JAMES M. LEWIS, Respondent, v. THE PULITZER PUBLISHING COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1898.

Officers of Corporation: MANAGER: AUTHORITY. The general officers or managers of corporations have power to employ attorneys at law or counselors without express authority from the directors. In the case at bar the suggestion that Jones did not sign the name of the defendant to the contract is without any force and in order to bind the defendant it was competent to show that Jones executed the contract in question as its agent.

Appeal from the St. Louis City Circuit Court.—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

CHAS. M. NAPTON for plaintiff; C. H. KRUM of counsel.

The contract between Jones and Pulitzer, the decree of the circuit court and the decision of the

supreme court, when all read together, can leave no possible doubt that Jones had authority to make the contract with Lewis. The contract itself was entirely reasonable, and the compensation agreed to be paid for the legal business was exceedingly moderate and unusually favorable to the newspaper. Under the evidence Jones was, when he made the contract, absolute master of the paper, and could make any contract he thought proper. Jones had a proprietary right in the business, and the contract was made while he was exercising full control. Jones' authority in the premises had been fully adjudicated when this case was tried, and when it was appealed, and the appeal was taken in the face of an express declaration of the supreme court that he had a right to make this contract. For these reasons the respondent moves the court to affirm the judgment with ten per cent damages. The appeal is evidently frivolous, and was taken for vexation and delay. It is of no consequence, in this connection, that appellant's attorney urges three points for reversal, and makes an argument which claims a want of authority in Jones to make the contract, when he is compelled to show in his statement of the case the very opinion of the supreme court, which simply nullifies everything he claims. If there ever was a case where the judgment should be affirmed with ten per cent damages it would seem that this is such a case. The chief reason is that the question raised had already been decided by the supreme court when the appeal was taken and appellant was fully aware of all the facts. Besides the foregoing, the evidence shows abundant ratification by the corporation. Jones sold his interest to the Pulitzer Publishing Company about June 20, 1897. Lewis sent in his quarterly bill for services on July 1, 1897, for $412.50, and it was paid by defendant company. "When an unauthorized act

of an agent of a corporation is clearly beneficial to the corporation, a presumption of ratification will arise from a slight circumstance." Bank v. Bank, 107 Mo. 145. Besides Lewis continued to act as attorney for the company without objection until August 17, 1897.

T. J. ROWE for appellant.

Upon the proof made the court should have found that Chas. H. Jones had neither express nor implied authority to make the contract of January 15, 1897, with the plaintiff. That the contract between Jones and Pulitzer, read in evidence and dated February 6, 1895, did not give Jones authority to employ an attorney for the defendant by the year and make a contract with him for that purpose. That the circuit court, by its decree, could not grant authority to Jones, and could only declare the right, power and authority he had by virtue of his contract with Joseph Pulitzer.

BIGGS, J.—The plaintiff is an attorney at law. The defendant owns the "*Post-Dispatch*," a daily newspaper published in the city of St. Louis. On the fifteenth day of January, 1897, Charles H. Jones was the editor and business manager of the paper. On that day Jones entered into the following contract with plaintiff, to wit:

"This agreement, entered into on the 15th day of January, 1897, in duplicate, by and between Pulitzer Publishing Company, party of the first part, and James M. Lewis, party of the second part, Witnesseth: Now, therefore, James M. Lewis, party of the second part, promises and agrees to and with the said Pulitzer Publishing Company, party of the first part, as follows: That he will attend to the legal business of the Pulitzer Publishing Company for the year 1897 for the sum of sixteen hundred and fifty dollars, the same to be paid

quarterly, at the rate of one hundred and thirty-seven dollars and fifty cents ($137.50) per month.

"In testimony whereof the said parties have hereunto set their hands and seals the day and the year first above written.

"CHARLES H. JONES (seal),

"Editor and Manager.

"JAMES M. LEWIS (seal)."

Plaintiff performed the services required of him under the contract until August 17, when he was peremptorily discharged by the defendant. He proffered to fulfill the contract, but his services were declined. The defendant paid him two quarterly instalments of his salary. After the expiration of the contract he demanded the remainder, and, the defendant having refused to pay, he brought this action to recover it.

The cause was submitted to the court, and it found the following to be the facts:

"The defendant is a corporation. That on February 6th, 1895, a written contract was made between Joseph Pulitzer, then the president of the Pulitzer Publishing Company, and acting for and in its behalf, and Charles H. Jones, which contract is as follows:

"This agreement made this 6th day of February, in the year 1895, between Joseph Pulitzer, of the city, county and state of New York, party of the first part, and Charles H. Jones, of the city of St. Louis, State of Missouri, party of the second part.

"Witnesseth: That for and in consideration of the sum of $80,000 in cash, and the performance by the party of the second part of the conditions hereinafter set forth, the party of the first part agrees to sell and deliver to the party of the second part 1,667 shares of the capital stock of the Pulitzer Publishing Company, of St. Louis, Missouri, being one sixth of the total capital stock of said corporation.

"And, whereas, the party of the first part is induced to make this sale and enter into the covenants herein contained on the assurance of the party of the second part of his ability to fulfill the covenants and conditions and avoid the penalties hereinafter set forth.

"Now, therefore, it is agreed by and between the parties hereto and made a part of the consideration for the sale of 1,667 shares of stock, that the party of the second part shall be appointed the editor and manager of the *Post-Dispatch*, a newspaper published in St. Louis, Mo., by the said Pulitzer Publishing Company, for the term of five years from the date hereof, at an annual salary of $10,000.

"And the party of the first part agrees to elect the party of the second part director and president of the Pulitzer Publishing Company aforesaid, and to give him control and management of said newspaper, the *Post-Dispatch*, during the above mentioned period of five years.

"Provided, however, that such appointment and salary shall cease and determine if. the party of the second part (shall fail to properly perform the duties of editor and manager aforesaid, or) shall at any time during said term accept or occupy any public or political office, elective or otherwise, or engage in any other business of any kind or description, it being covenanted by and between the parties hereto that the party of the second part shall devote all the time, ability and energy he possesses to the growth, prosperity and success of said St. Louis *Post-Dispatch* (and conduct the same with strictest integrity and economy).

"And it is further agreed by and between the parties hereto, as a test of the ability of the party of the second part to properly manage and edit the said St. Louis *Post-Dispatch*, that such appointment and salary shall cease and determine in the event that the gross reve-

nues of the *Post-Dispatch*, from advertising and circulation combined, shall, during the year 1895, be less than the gross revenues from the same sources combined were for the year 1894.

"And it is further agreed by and between the parties hereto, that said appointment and salary shall cease and determine in the event that the net profits of the *Post-Dispatch* for the year 1896 shall be less than the net profits for the year 1893.

"And it is further agreed by and between the parties hereto, their executors, administrators and assigns, that in case of the death of the party of the second part, his resignation, failure of health or retirement, or inability to perform the duties and labors of editor and manager of the *Post-Dispatch* at any time within three years from the date of the execution of this contract, the party of the first part shall have the option to repurchase for the sum of eighty thousand dollars, the herein mentioned one thousand and six hundred and sixty-seven shares of the stock of the Pulitzer Publishing Company, which in such event the party of the second part agrees to sell and transfer to the party of the first part for the sum of eighty thousand dollars.

"And it is further agreed that in case of the death of the party of the second part or his resignation, failure of health, retirement or inability to perform the duties and labors of editor and manager of the St. Louis *Post-Dispatch*, after the expiration of the aforesaid three years and within two years thereafter, the party of the first part shall have the option to repurchase the aforesaid one thousand six hundred and sixty-seven shares of the stock of the Pulitzer Company, but in such case the price instead of being eighty thousand dollars shall be such sum as may be fixed as the value of said stock by arbitration. Each of the

parties hereto, or their executors or administrators, shall name an arbitrator, and if the arbitrators shall differ in their appraisement they shall name an umpire, and the decision of said umpire shall be final as to the value of said stock.

"The word 'presidency' in line 9, page 2, stricken out; the words 'shall fail to properly perform the duties of editor and manager aforesaid or' between lines 10 and 11, page 2, inserted: the words 'and conduct the same with strictest integrity and economy,' and of line 17 and sub. page 2 inserted: word 'death,' line 6, page 3, and word 'death,' line 18, page 13, substituted for words 'default' in both places, before execution thereof.

"In witness whereof the parties hereto have set their hands and seals the day and year first above written.

"JOSEPH PULITZER,<br>
"CHARLES H. JONES."

That in pursuance of and under said agreement the said Charles H. Jones assumed the management and control of the said newspaper.

Shortly after the date of said contract and thereafter, a controversy arose between him and the defendant corporation as to the extent of his authority under said contract. That said controversy resulted in a suit between said Jones and said corporation, which was instituted in the circuit court of the city of St. Louis, and such proceedings were therein had that on the seventeenth of February, 1896, the said court entered the following decree:

"Now comes the plaintiff, Charles H. Jones, by his attorneys and also comes the defendants, Samuel Williams, Florence D. White, S. S. Carvalho and the Pulitzer Publishing Company, by their attorneys, and

DECREE:        this cause having come on to be heard, and being fully submitted on final hearing upon the pleadings and proofs and arguments of counsel, and the same being fully considered by the court, it is ordered that the motion by the defendant to dissolve the preliminary injunction hereinbefore granted be overruled; and the court doth find the issues in this case for the plaintiff, and it is thereupon ordered, adjudged and decreed by this court as follows, to wit:

"That the defendants, Samuel Williams, Florence D. White, S. S. Carvalho and the Pulitzer Publishing Company, and the servants, agents and employees of them and each of them, be and are hereby restrained and enjoined from interfering with the plaintiff's control and management of the St. Louis *Post-Dispatch* and from in any manner hindering or impeding him in the duties as editor and manager of said newspaper during the period ending five (5) years from the sixth day of February, 1895, under terms of the contract of February 6, 1895, set forth in the petition herein, or with plaintiff's control over the editorial policy of said newspaper, or with the performance of his duties as editor and manager under said contract, including the employment, direction or dismissal by him as editor and manager of said newspaper of any of the subordinates or employees connected with the editorial news or business departments of said newspaper; provided, however, that if the net profits of said *Post-Dispatch* newspaper, under the plaintiff's management, without hinderance or interference by the defendant or either of them, or of Joseph Pulitzer, for the year 1896 be less than the net profits of the said newspaper were for the year 1893, or if at any time during the period ending five years from February 6, 1895, the plaintiff fails to properly perform his duties as editor and manager

aforesaid, or accept or occupy any political or public office, elective or otherwise, or engage in any other business, this injunction shall thereby be dissolved; and for the purpose of certainly carrying into effect this decree, and to preserve the property and rights of the parties to be affected by it, the court reserves the power to appoint a receiver at any time hereafter, to take possession of the property and earnings of said Pulitzer Publishing Company and administer the same as the court may direct and until this decree be fully executed; and defendant, Joseph Pulitzer, not having been served with process herein, and no appearance having been entered on his behalf; the cause is as to him dismissed, and it is further ordered that the plaintiff recover of Samuel Williams, D. White, S. S. Carvalho, and the Pulitzer Publishing Company his costs and charges in this behalf expended, and that execution issue therefor.''

"That said decree was on January 17, 1897, upon an appeal by said defendant corporation affirmed by the supreme court. The court then found that Jones' executed the contract above set forth as the agent of defendant, and the court made the further finding:

"That plaintiff under and in pursuance of said contract rendered the legal services thereby required of him until the 17th day of August, 1897, when the defendant corporation, without cause, discharged the plaintiff as its attorney and declined to permit him to render it any further services in that capacity, although plaintiff stood ready and willing to perform such services and so informed defendant at the time.

"The plaintiff received under said contract the compensation due him until July 1, 1897, viz.: $825, and that there is due him under said contract the further sum of $825, of which the sum of $412.50 came

due October 1st, 1897, and $412.50 came due January 1, 1898.

"D. D. FISHER, Judge."

In addition to the foregoing facts it appeared that the contract with plaintiff was executed by Jones without the consent or knowledge of the defendant's board of directors, and for that reason defendant insists that the plaintiff ought not to recover in the action. This view of the case was presented by instructions asked by the defendant, which the court refused. The judgment was for the plaintiff and the defendant has appealed.

The circuit court in the case of Jones v. Williams, *supra*, in effect decided that under his contract with Pulitzer Jones became the business manager of the *Post-Dispatch* for five years from February 6, 1895, with full authority to employ all persons necessary to the proper conduct of the business, and that within this sphere he was the absolute master of the paper. The supreme court affirmed this decree in all respects (139 Mo. 1), and in discussing the nature and extent of Jones' employment and his rights under the contract the court said that his control of the paper "was a property right in the nature of a lease which he had the right to enjoy for five years from the date of the contract." The decision of the supreme court construing this contract is binding on us. It having been determined that Jones was the general manager of all the business connected with the publication of the paper, it is very clear under other decisions of the same court that he had the authority as such general manager to employ counsel to represent the defendant in all matters growing out of the business management of the paper, and which required the services of a lawyer. This question was before the supreme court for the first time in Western Bank v. Gilstrap, 45 Mo.

419. It was there decided that the general officers or managers of corporations had power to employ attorneys at law or counselors without express authority from the directors. This ruling was affirmed in Southgate v. Railroad, 61 Mo. 89. In delivering the opinion in that case Judge WAGNER quoted approvingly the following passage in the decision of the Chancellor in Am. Ins. Co. v. Oakley (9 Paige, 496), viz.: "It is a matter of every day occurrence for the president and other head officers of corporations to employ and retain attorneys and counselors to prosecute or defend suits, or to assist in legal proceedings in which the corporation is interested. And I doubt whether it is usual for members of the bar to take the precaution to inquire when they are thus retained whether there has been a formal resolution of the board of directors authorizing their retainer in the case." In the case at bar Jones not only had the editorial and business management of the paper, but his employment was for a definite time, and during the time he was absolutely free from any control on the part of the other officers of the defendant, and besides his employment was coupled with a proprietary interest in the paper, and the value of such interest was made to depend largely upon the success with which he conducted the paper. These facts make a strong case for the application of the rule declared in the foregoing cases. The evidence shows that there were a great many libel suits pending against the defendant at the time the plaintiff was employed, and common business experience teaches that in the conduct of a daily newspaper in a great city questions arise almost daily concerning which the business manager ought to take legal advice. Therefore we think it quite clear that under the facts Jones had authority as the general manager of the business of the defendant to make the contract with plaintiff.

The suggestion that Jones did not sign the name of the defendant to the contract is without force. In order to bind the defendant it was competent to show that Jones executed the contract as its agent. Jones v. Williams, *supra*, loc. cit., 23.

The judgment of the circuit court will be affirmed. All concur.