James A. PREVOST, Sr., and James A. Prevost, Jr., Appellants,

Fred M. WILKIN and John W. Wilkin d/b/a Wilkin Brothers Commission Company, Respondents.

Nos. 23509, 23510.

Kansas City Court of Appeals.

Missouri.

June 4, 1962.

Thaine Q. Blumer, Blumer & Wright, Kansas City, for appellants.

Martin J. Purcell, James C. Mordy, Morrison, Hecker, Cozad & Morrison, Kansas City, for respondents.

MAUGHMER, Commissioner.

Plaintiff brought suit for money had and received. Defendants counterclaimed against plaintiff and against a third party

defendant. The court directed a verdict for defendants against the third party defendant. The jury found for plaintiff on his petition and for defendants on their counterclaim. The plaintiff and the third party defendant have appealed.

Plaintiff, James A. Prevost, Sr., who at the time of trial in March, 1961, was 71 years of age, had been since 1928, an "order buyer" at the Kansas City Stockyards. He operated as Prevost Order Buying Company, and mostly bought and sold hogs. He bought on orders from individual customers. To operate such a business extensively required either a large amount of capital or credit. For this reason and as a protection to commission firms that were dealing with these individual operators—order buyers and speculators—it was the practice for such persons to associate themselves with some livestock commission firm that was a member of the Kansas City Livestock Exchange. The order buyer opened a "margin account" with the commission company and it in turn honored his drafts and kept his dealings in a separate bookkeeping account. He was debited for purchases and other expenses and credited with remittances from sales as they came in. About 1951, the plaintiff entered into such arrangements with defendants Fred M. Wilkin and John W. Wilkin d/b/a Wilkin Brothers Commission Company. The plaintiff kept a margin account with Wilkin which usually amounted to a few thousand dollars and Wilkin received ten cents per head on hogs bought and sold.

Although plaintiff sued defendants for money had and received there is really no dispute as to this account. Plaintiff's business was always profitable. Plaintiff claims and defendants admit that at the time of trial his personal account with them had a credit balance of $2,095.33. The court instructed the jury to find for or credit plaintiff with this amount. The verdict was in accord with these instructions and the judgment entered credited plaintiff with this sum.

This lawsuit in truth and in fact arose from the similar business transactions which plaintiff's son had with defendants. This son, James A. Prevost, Jr., was brought in as a third party defendant. During the early Fifties young Prevost was a partner with his father. In 1957, 1958 and 1959, he operated on his own with Wilkin Brothers as his broker. His largest account was a weekly order for pigs from a serum company. While the son's operations were never so profitable as his father's and his account showed a debit balance a great part of the time, he, nevertheless, kept going through 1957 and 1958. In the fall of 1958, he had over 800 pigs on hand and they developed a contagious disease similar to cholera. In addition to pig losses, this sickness resulted in additional expenses for treatment and feed. The widespread prevalence of the disease caused this type of business to become almost dormant, but young Prevost continued to draw living expenses from his broker. He said he knew he had lost a lot of money; that he offered to sign a note for defendants and that "whatever they prove that I owe, I owe". He said "My obligation I assumed from what they told me was $12,500, but it isn't that much apparently from what they said today".

Defendants' books, which were not questioned by either of the Prevosts as to their correctness, showed that young Prevost's account had a debit balance of $12,044.05 when the arrangement was terminated in 1959. The trial court directed a verdict for defendants against the third party defendant James A. Prevost, Jr. for this amount. We believe the verdict was properly directed against the third party defendant. The general rule which covers such a situation was stated in Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691, 693:

"It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. (citations).

There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or *in his individual testimony* on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and *if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned,* and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and *such proof is unimpeached and uncontradicted,* the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass. (citing cases)". (Italics ours).

This quoted pronouncement was approved in Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282–287. Although plaintiff and the third party defendant took separate appeals, the appeals are joined in one brief.

The real dispute here is whether or not James A. Prevost, Sr. is liable for his son's indebtedness to defendants. By their counterclaim defendants assert that he is because on January 28, 1958, the following agreement was signed and entered into between them:

"Agreement

"This Contract between Wilkin Bros. Commission Company and James Prevost Sr., Witnesseth:

"That whereas James A. Prevost, Jr., is purchasing livestock through the Wilkin Brothers Commission Company and the Wilkin Brothers Commission Company is paying the purchase price for said James A. Prevost Jr.

"In consideration of the payment of said purchases, James Prevost, Sr. agrees to guarantee Wilkin Brothers Commission Company against any loss whatever by reason of payment for any purchases made by James A. Prevost, Jr.

"Dated at Kansas City, Missouri, this 24 day of January 1958.
"S/ James A. Prevost Sr.
"S/ Wilkin Bros.
"By F. M. Wilkin
"Witness:
"T. J. McKinley."

Plaintiff admits that he signed this agreement. His defense is that early in 1959, a dispute arose between himself and defendants—defendants claiming he was obligated to pay his son's debt to them, and plaintiff contending that he was not so obligated—and that plaintiff offered to pay the sum of $500 in full settlement and compromise of the dispute which offer defendants accepted, resulting legally in establishing an accord and satisfaction. The evidence shows that early in 1959, plaintiff drew, signed and defendants cashed his check for $500. Plaintiff handed the check to his son, who delivered it to defendants. Plaintiff says it was in full settlement of defendants' claim against him on his son's indebtedness. Defendants say it represented merely a payment of interest on the unpaid balance. James A. Prevost, Jr. testified as follows about the check:

"A. * * * My dad gave me this as interest to pay Mr. Fred, so I could continue for another year.

"THE COURT: Interest on what?

"THE WITNESS: The interest on my indebtedness, Your Honor".

The contentions of both plaintiff and defendants as to the guaranty agreement and the $500 check were fully submitted to the jury. The jury found for defendants and against plaintiff.

Three assignments of error are presented on appeal. One is that it was error to direct a verdict against the third party defendant. That point has already been disposed of and

adversely to appellants under the reasoning in Coleman v. Jackson County, supra. We think that the basic facts of defendants' claim against young Mr. Prevost were admitted in his individual testimony and were established by the bookkeeper's records, the authenticity and correctness of which were unquestioned. Hence there remained no question of fact as to this point. We have examined the cases cited by appellants which hold the court may not direct a verdict on oral testimony where the same was not admitted by the opponent. Those cases do not rule our case.

■ Appellants charge that the court erred "in refusing to allow third party defendant to testify in his own behalf because such was an abuse of discretion". The assignment is misleading and is not substantiated by the record. James A. Prevost, Jr., the third party defendant, was allowed to and did testify. His testimony covers 19 pages of the transcript. The same attorneys appeared for and represented both plaintiff and the third party defendant. After all parties had concluded their testimony and counsel for both of the Prevosts had informed the court he had nothing further to offer, a recess was declared and the parties retired to the court chambers. There counsel for plaintiff and the third party defendant moved the court to "allow him to withdraw resting his case and offered to put the third party defendant James A. Prevost, Jr. on the witness stand" to prove the figures given by defendants' bookkeeper from defendants' books were inaccurate. In response to inquiries by the court, counsel admitted that the court was not asked for an opportunity to examine the books before the case was closed, never suggested that the movant's clients wanted to look at the books, and counsel knew that plaintiff's contention was not that the books were inaccurate, but that there had been an accord and satisfaction. It is apparent, too, that this request came after Mr. McKinley, the bookkeeper, had brought the records into court, testified and was cross-examined thereon. The court denied the motion to

reopen the case. We rule that in doing so the court did not abuse its discretion or commit error.

Appellants' final point asserts it was error to give Instruction No. 5. Instruction No. 1 properly submitted plaintiff's defense of accord and satisfaction as to defendants' counterclaim. Instruction No. 5, defendants' main instruction, required a finding of execution and delivery of the guaranty agreement, reliance thereon by defendants in their advancement of money to young Prevost, and the amount of said advancements. The sole complaint against this instruction is that it did not negate plaintiff's defense of accord and satisfaction or refer to it in any way, nor did it refer to the instruction submitting that defense. It is asserted that the two instructions are conflicting and inconsistent. Appellants rely upon the much discussed case of Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14. Our Supreme Court en banc therein overturned a line of cases and ruled, we think, that in an automobile accident case where the defense of contributory negligence was pleaded, substantial evidence thereon shown, and the defense was submitted to the jury, it was error "to give a verdict-directing instruction for plaintiff which fails to refer to or negative his contributory negligence". The court said further in such a situation "the result is a definite conflict between the two instructions". The opinion continues:

"Which will the jury follow? If the jury find the facts hypothesized in plaintiff's instruction it may consider that it need not give further consideration to other instructions dealing with the issue of liability. On the other hand, if, as it should, the jury carefully considers and attempts to reconcile all of the instructions, it will likely be perplexed and confused as to the proper manner to interpret and attempt to follow the inconsistent directions contained in the two conflicting instructions. * * *"

The Moore opinion (page 24) contains this additional comment:

"* * * we note that in the case at bar the court gave the following instruction at the request of defendant: 'The court instructs the jury that if you find and believe from the evidence that both plaintiff and defendants were guilty of negligence as defined in other instructions, and that plaintiff's negligence (if any) directly contributed to the collision in question and to plaintiff's injuries, then plaintiff cannot recover and your verdict will be in favor of defendants.' While we need not and do not rule the question, we observe that an instruction of that nature might be a sufficient basis for a ruling that the error would not be considered reversible".

■ Contributory negligence and accord and satisfaction are both generally held to be affirmative defenses. Appellants say that the doctrine expounded in the Moore case for contributory negligence cases should be extended to and should be applied to the case at bar and the defense of accord and satisfaction.

■ In the first place the Moore case specifically declares a rule where the defense is contributory negligence. We find nothing to indicate it is announcing an instruction rule for all affirmative defenses. It may be contended, as appellants contend, that logic makes the rule equally applicable to all affirmative defenses. But the Moore opinion does not say so. It has long been the law in Missouri that all of the instructions given should be read and considered together in order to determine if the jury was misled or misdirected. The Supreme Court in Johnson v. Flex-O-Lite Mfg. Corp., 314 S.W.2d 75, 81, said:

"All of the instructions given in a case should be read together and as parts of a single charge in order to determine the correctness of the charge or the effect of any deficiency in a particular instruction. (citations)".

For this court to rule the case at bar as covered by the Moore opinion, would require us to go beyond its actual holding, by-pass the rule that all of the instructions be considered together and in effect further enlarge and extend the change promulgated by that opinion. We believe that if any such extension is made it should be by the Supreme Court rather than by this court.

■ Furthermore, we believe there is a difference between instructions submitting contributory negligence and accord and satisfaction, with respect to their being misleading and inconsistent, and certainly as to the likelihood of perplexing or confusing the jury. There is a difference in the time element. Contributory negligence is interwoven with claimant's assertion of original liability. It is almost a part of plaintiff's basic case for if he at the time was contributorily negligent and so contributed to cause the accident, liability never attaches and he cannot recover, whereas the defenses of payment, settlement, accord and satisfaction do not dispute the original liability but claim that later it was extinguished. The jury is much more likely to be confused, we think, by separate instructions on negligence and contributory negligence in an automobile accident case than by separate instructions on original liability under a guaranty instrument and a later compromise, accord and satisfaction thereof. A jury might find a defendant negligent but if it believed plaintiff was concurrently also negligent, liability would never come into being and hence both questions should be considered at the same time. Moreover, if the jury, as often happens, wanted to find both negligence and contributory negligence, it might with separate instructions be confused as to which should have final effect. But with separate instructions as to liability under a guaranty agreement, and a later settlement or accord and satisfaction of that liability, we think the

jury should have no difficulty as to which would have the final effect.

It is our opinion in the instant case that the jury was not misled by the instructions. We do not believe that Instructions No. 1 and No. 5 are actually conflicting or that reversible error was committed in giving them. We believe from a reading and consideration of all of the instructions that the jury was fully and fairly charged.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.