**M. F. A. COOPERATIVE ASSOCIATION OF MANSFIELD, Missouri, Plaintiff-Apellant,**

v.

**Bill MURRAY and Floyd Lawson, Defendants-Respondents.**

No. 8119.

Springfield Court of Appeals.

Missouri.

March 1, 1963.

Lincoln, Haseltine, Keet, Forehand & Springer, Springfield, for plaintiff-appellant.

No appearance for defendants-respondents.

STONE, Judge.

This is a replevin action, in which M. F. A. Cooperative Association of Mansfield, Missouri (hereinafter referred to as plaintiff) appeals from an adverse judgment (a) directing the return to Bill Murray and Floyd Lawson (hereinafter referred to as defendants) of a 1955 Fruehauf refrigerated trailer, Serial No. AV–198283 (hereinafter sometimes referred to as the trailer) and (b) adjudging that defendants recover from plaintiff $1,500 for loss of use of the trailer together with costs. An approved bond having been given by plaintiff [Rules

99.03 and 99.04; Secs. 533.030 and 533.040][1] when suit was instituted on May 3, 1960, the sheriff took the trailer the following day and delivered it to plaintiff, who still has possession of it by virtue of the filing and approval of a supersedeas bond. Rule 82.-09.

During the first half of 1959, *defendants,* operating out of Crane, Missouri, as partners under the firm name of Lawson and Murray, were engaged in hauling live chickens to the Clinton, Missouri, processing plant of Anderson-Haley Poultry Company (hereinafter referred to as Anderson-Haley), to whom a Missouri certificate of incorporation had been issued on January 14, 1959. Defendants "bought some" of the poultry themselves and "hauled some for other people." For the poultry delivered to its Clinton plant, Anderson-Haley was to pay the "market price" plus 1½¢ per pound for hauling. Defendants were to collect the sale price of the chickens hauled for others and were "to pay those other people" for their poultry. At first, Anderson-Haley usually paid defendants within two or three days after delivery of chickens to the Clinton plant. However, as time passed, the indebtedness of Anderson-Haley to defendants mounted steadily so that, by June 22, 1959, that indebtedness was (as defendants testified) *"a little less than $65,000."* In these circumstances, defendants sought and obtained "some security from (Anderson-Haley) for this indebtedness" in the form of a negotiable promissory note in the principal sum of *$100,000,* dated June 22, 1959, payable in monthly installments of $1,000 each, and secured by deed of trust of even date (hereinafter referred to as the deed of trust of June 22) which covered Anderson-Haley's processing plant at Clinton, including "all

plant machinery and equipment * * * which are permanent fixtures." This deed of trust was, on the same day, filed for record in the office of the Recorder of Deeds of Henry County, Missouri. We note parenthetically defendants' trial explanation of the $100,000 principal sum in the note of June 22, to wit, that, although Anderson-Haley's processing plant was not operating then, Frank M. Haley (identified as president of Anderson-Haley) "was figuring on starting up again and we wanted enough of those assets to assure us (defendants) of our money"—"we didn't know how much poultry they (Anderson-Haley) would let us haul in there to them" in the future.

On August 7, 1959, *plaintiff* sold and delivered two loads of broilers to Anderson-Haley at Clinton, for which check "was supposed to issue * * * within the next day or two." No remittance having been received in the meantime, plaintiff's manager Tripp went to Clinton on September 22, 1959, found that Anderson-Haley's plant was not operating, and after talking with Haley examined the recorded deed of trust of June 22. On the day following his trip to Clinton, to wit, on September 23, 1959, Tripp went to the office of attorneys (herein identified as M & P) in a city (not Springfield) within the same general area as Crane. When asked why he had contacted those attorneys, Tripp said that he had understood that they represented defendants "who were having trouble on their claims" and that they (M & P) "could and would help me." According to Tripp (*neither M nor P testified*), he told P on September 23 that he (Tripp) had found of record in Henry County the deed of trust of June 22 and "that with this four-month period facing me, I would have to force them (Anderson-Haley) into bankruptcy,[2]

1. All references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R., and all references to statutes are to RSMo 1959, V.A.M.S.

2. That, by execution of the deed of trust of June 22, Anderson-Haley made a preferential transfer [11 U.S.C.A. §§ 96 (a) (1) and 1(30)] constituting an act

of bankruptcy [11 U.S.C.A. § 21(a) (2)], for which a petition in bankruptcy might have been filed against Anderson-Haley within four months thereafter, to wit, on or before October 21, 1959 [11 U.S. C.A. § 21(b)], appears to have been conceded from the outset by all interested counsel.

and he (P) advised me that if I would not rock the boat, they (M & P) would contact Haley and get something worked out, and I told him (P) then that I would wait a day or two."

■ On September 25, 1959, P called Tripp over long distance and "wanted to know if I (Tripp) had made up my mind about starting bankruptcy proceedings against Anderson-Haley," to which Tripp replied that "by five o'clock I would give him my answer as to whether (plaintiff) was going to start the bankruptcy proceedings or let them (M & P) try to get us some security and work it out." On the same day, Tripp conferred with and employed attorneys in Springfield (herein identified as W & E), who thereafter represented plaintiff in protracted negotiations with M & P. The positive and undisputed testimony of Tripp and of attorneys W & E was that attorneys M & P said, from time to time, that they were representing defendants and had conferred with their clients on several occasions concerning the matters under discussion. Since the relationship of attorney and client is essentially one of agency [Henderson v. Cape Trading Co., 316 Mo. 384, 392, 289 S.W. 332, 334 (9)], it is recognized that neither the agency of attorneys M & P nor the scope of their authority could be established by their unsworn statements. See cases collected in 23A West's Missouri Digest under Principal and Agent, ■ However, grudging admissions wrung from defendants themselves were sufficient, we think, to have permitted a finding that, at all times and in all things here material, M & P were acting as defendants' agents and attorneys and within the scope of their authority as such.

During the period from September 25 to October 21, 1959, there was a running exchange of long distance telephone calls between plaintiff's attorneys W & E and defendants' attorneys M & P. These discussions obviously proceeded upon the accepted premise that an effective involuntary petition in bankruptcy could be filed against Anderson-Haley [11 U.S.C.A. § 95]; that such petition would be filed on or before October 21, 1959, unless in the meantime Anderson-Haley's indebtedness to plaintiff was secured adequately; and that, if Anderson-Haley were adjudicated a bankrupt, the lien of the deed of trust of June 22 would be avoided and defendants thereby would be reduced to the status of common, unsecured creditors. In the initial conversation between plaintiff's attorney W and defendants' attorney M on September 25, M commented that bankruptcy should be avoided. W agreed but insisted that plaintiff "wanted its money the same as (defendants) wanted their money." Whereupon, M "said that there was no money, no cash, but that he believed he could find some equipment as security for our client (plaintiff) if we would give him a reasonable length of time to work it out."

On September 29, plaintiff's attorney E talked with defendants' attorney M, who stated that defendants "had two trailers and one tractor down at Crane that had been transferred from Clinton to Crane" and that "an arrangement could be worked out and security could be given" for Anderson-Haley's indebtedness to plaintiff. E asked for a note secured by chattel mortgage on the tractor and one of the trailers. "At first, M agreed that would be satisfactory, but he then said he would check with his clients (defendants) and also with Haley, and then would give me an answer in a few days." In a subsequent conversation between E and M "a few days later, a day or two later," M reported "that he had checked with these gentlemen and that they could not give us a chattel on the tractor but could and would give us * * * a chattel on the trailer * * * that the trailer was in good condition and was refrigerated * * * and that they considered that as adequate security" for plaintiff's account. At that time, E and M "agreed that would be the arrangement, that is, the chattel mortgage would be executed on this trailer, and the title obtained

from Mr. Haley." M represented that title to the trailer "was clear" and "had never been touched, and that Mr. Haley had that title."

This agreement for execution of a note and chattel mortgage covering one of the trailers was confirmed early in October in another long distance telephone conversation (this time between plaintiff's attorney W and defendants' attorney P), in which P said that the two trailers would be made available for personal inspection by plaintiff's manager Tripp and that, after such inspection, "a note and chattel mortgage on the equipment of his choice" would be executed. Tripp did inspect the two trailers at Crane about the middle of October, copied the serial number of one of those trailers (the trailer here in controversy), and took that information to plaintiff's attorney E in Springfield for use in preparation of a chattel mortgage. E then called defendants' attorney M "to make the final arrangements for getting both the title to the trailer and Mr. Haley" to M's office where the note and chattel mortgage were to be executed and the title to the trailer was to be delivered. M said that title "was in the name of * * * Anderson-Haley" and repeated that it "was free and clear." M also told E that the title was in M's office; and, without objection, E testified that he "understood * * * we were to get the title as soon as the chattel mortgage was signed" so that the mortgage lien could be noted on the face of the certificate. Furthermore, among the exhibits in evidence we find a memorandum by E's secretary recording the fact that on October 16 defendants' attorney P had called over long distance and, finding E then out of the office, had asked his secretary to tell him that M & P then had "a clear title" to the trailer.

Although the attorneys twice agreed upon definite dates for the closing of the contemplated transaction in M's office, Haley "did not show up" on either occasion. Finally, M advised that Haley "was tied up with internal revenue people in Clinton and could only be reached up there," so Tripp took the note and chattel mortgage to Clinton where they were executed on behalf of Anderson-Haley by Haley, as president. The note in the principal sum of $3,818.33, payable to plaintiff's order ninety days after date, and the chattel mortgage on the trailer in controversy were dated October 21, 1959. In the mortgage acknowledgment before a notary public in Henry County (the notary being the attorney who subsequently acted as trial counsel for defendants), Haley declared Anderson-Haley "to be lawful owner of said property (the trailer), in full possession thereof, and as having good right to mortgage the same." The mortgage was filed for record in Henry County on October 24. Nothing having been paid on the note in the meantime, plaintiff sought in April 1960, by virtue of condition broken in the chattel mortgage, to take possession of the trailer at Crane. Defendant Lawson refused to release it because (so plaintiff's evidence ran) "ownership had not been established on it, and he was afraid it would cause trouble with Anderson-Haley if he released it." This replevin action followed shortly.

Defendants introduced in evidence the certificate of title to the trailer, which had been issued on October 9, 1957, to *R. S. Anderson Co., Inc.,* of Clinton, Missouri, and the assignment on the reverse side of the certificate to "Lawson & Murray, Box 333, Crane, Missouri" bearing the individual signature of Frank M. Haley acknowledged before a notary public in Henry County on October 14, 1959. Upon trial, defendants testified that Haley had delivered into their possession the tractor and the two trailers (one of which was the trailer in controversy) "one month or so" prior to October 14; that the assigned certificates of title to those vehicles had been mailed to defendants at Crane and probably had been received "right after he (Haley) signed" them; and that defendants' attorney M thereafter "might have had" the certificates of title "for a while,

anyway." Neither plaintiff's manager nor its attorneys had seen the certificate of title to the trailer in controversy prior to institution of this action. Upon cross-examination, plaintiff's attorney E thus explained his failure to pursue more diligently physical examination and possession of the certificate of title to the trailer: "When you have dealt with (M) as long as I have * * * you can take his word for a fact, and I honestly think (M) thought it was a clear title. * * * I think he had it (the certificate of title) and thought it was clear. He told us he had it, and I believed him." As hereinbefore recorded, neither M nor P testified; and, although they initially represented defendants in this suit, they withdrew long before trial.

*Plaintiff's* theory of the case has been and is that, under and by virtue of the chattel mortgage executed by Anderson-Haley, plaintiff had an "equitable special interest" in the trailer entitling plaintiff to possession thereof as against defendants, who acquired no title by Haley's purported assignment of the certificate of title issued to R. S. Anderson Co., Inc., and who, in any event, were estopped to assert their (defendants') claim of ownership or to deny plaintiff's right to possession under the chattel mortgage. *Defendants* pleaded and submitted in the trial court on the theory that, at all times from and after October 14, 1959, they were the owners, and as such entitled to possession, of the trailer. Plaintiff-appellant has filed an exhaustive appellate brief with eight principal points relied on and numerous subpoints; but, although defendants-respondents vigorously and successfully defended in the circuit court, they have filed no brief here, thus offering no aid or assistance to us and indulging a practice neither helpful nor commendable. Mannon v.

Frick, 365 Mo. 1203, 1205, 295 S.W.2d 158, 161; John Deere Co. of St. Louis v. Davis, Mo.App., 335 S.W.2d 686, 688.

■ Before ruling the points presented by plaintiff-appellant, certain preliminary observations may be appropriate and advisable. Replevin is primarily an action to determine the right of possession [Dugan v. Trout, Mo.App., 271 S.W.2d 593, 600(13); Harrington v. Interstate Securities Co., Mo.App., 57 S.W.2d 438, 439], not to try title or the right of property. Rankin v. Wyatt, 335 Mo. 628, 634, 73 S.W.2d 764, 767(8), 94 A.L.R. 941; Wilkison v. Grugett, 223 Mo.App. 889, 895, 20 S.W.2d 936, 939(2). So, a plaintiff in replevin, who is not invested with the legal title to a motor vehicle but who establishes a special property or interest therein with an attendant right of possession, may recover possession from one who has no title or right of possession. Pearl v. Interstate Securities Co., 357 Mo. 160, 164, 206 S.W.2d 975, 978(8); Rankin v. Wyatt, supra; Robinson v. Poole, Mo.App., 232 S.W.2d 807, 811(2). Insofar as we are advised, no one has undertaken to define or delimit the "special property or interest" which will support a claim of right of possession in replevin.[3] This, no doubt, because "(a)s the right of a defendant to retain the property descends the scale of relative rights of possession to the vanishing point of a wrongful detention by a trespasser, the interest sufficient to sustain plaintiff's action in replevin diminishes." Rankin v. Wyatt, supra, 335 Mo. loc. cit. 634, 73 S.W.2d loc. cit. 767

■■ By their pleading and proof, instant *defendants* rested their asserted right of possession upon alleged ownership of the trailer from and after October 14, 1959, and in turn this claim of ownership upon the assignment of the certificate of title to

3. Generally speaking, "a special interest in property denotes, not outright ownership, but a limited or qualified right distinct from and subordinate to the interest of the general owner, such as the right of lawful custody of goods, with the right to detain them against the general or absolute owner." Hall v. Martindale, Mo.App., 166 S.W.2d 594, 607.

the trailer. As hereinbefore noted, that certificate of title had been issued to *R. S. Anderson Co., Inc.,* in 1957 (prior to incorporation of Anderson-Haley), and the assignment on the reverse side thereof had been signed by Frank M. Haley individually. The name of the registered owner, R. S. Anderson Co., Inc., did not appear in the assignment, and Haley's position with, relationship to, or authority to sign for, that corporation was not shown either in the assignment or by evidence aliunde.[4] In short, there was nothing to take the assignment without the general rule that, "in order to bind the corporation, a contract or other instrument entered into by an officer or agent must be executed in such a manner as to show on its face that it is the act of the corporation, that is, that it was the intention of the parties to bind the corporation and not the officer or agent individually" [19 C.J.S. Corporations § 1074, p. 611]; and, on the record before us, the purported assignment by Haley individually was not the act of, or binding upon, R. S. Anderson Co., Inc. With no properly-assigned certificate of title to the trailer having been delivered to defendants, they acquired no legal title to the trailer and were not the owners thereof when this action was instituted;[5] and their right to possession of the trailer, depending (as it did under their pleading and proof) upon their alleged ownership, thus "descends the scale of relative rights of possession to the vanishing point." Rankin, supra.

*Plaintiff* rested its asserted right of possession upon condition broken in the chattel mortgage on the trailer executed under date of October 21, 1959, on behalf of Anderson-Haley by Haley, its president. As we have seen, legal title to the trailer was, at all times herein material, in R. S. Anderson Co., Inc. However, in Anderson-Haley's articles of incorporation subscribed and sworn to on January 13, 1959, by Frank M. Haley, Marilyn Anderson Haley and Robert R. Anderson, it was recited and represented that 1,500 shares of common stock having an aggregate par value of $150,000 had been paid up with $2,000 in cash and $148,000 in property, which consisted of realty valued at $128,643.59 and personalty (itemized and identified as eleven motor vehicles and two trailers, *one of which was the trailer in controversy*) having an aggregate valuation of $19,356.-41. Thus, although the facts were not developed in sufficient detail to support such conclusion at this time, the situation suggests that Anderson-Haley may have acquired a "special interest" in the trailer which it could have perfected into legal title. See Peper v. American Exchange Nat. Bank in St. Louis, 357 Mo. 652, 659, 210 S.W.2d 41, 45(7); Allstate Ins. Co. v. Hartford Acc. & Ind. Co., supra, 311 S.W.2d loc. cit. 46 (footnote 6).

Regardless of that, Anderson-Haley's execution and delivery to plaintiff of the chattel mortgage on the trailer dated October 21, 1959, implied that title was then in the mortgagor (Anderson-Haley),[6] and that implication was strengthened and confirmed (a) by the specific declaration of its

4. Contrast Willson v. Chicago Bonding & Surety Co., Mo., 214 S.W. 371; Reifeiss v. Barnes, Mo.App., 192 S.W.2d 427, 431(7); City of Maplewood v. Johnson, Mo.App., 273 S.W. 237; Morton v. Manchester Inv. Co., 181 Mo.App. 364, 168 S.W. 904; Lewis v. Pulitzer Pub. Co., 77 Mo.App. 434.

5. Section 301.210; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605, 608(6), and cases collected in footnote 9; Allstate Ins. Co. v. Hartford Acc. & Ind. Co., Mo.App., 311 S.W.2d 41, 46(2, 3); Craig v. Rueseler Motor Co., Mo.App., 159 S.W.2d 374, 378(4). See also State ex rel. Connecticut Fire Ins. Co. v. Cox, 306 Mo. 537, 545, 268 S.W. 87, 90(1), 37 A.L.R. 1456.

6. International Harvester Co. v. Threlkeld, 226 Mo.App. 600, 603, 44 S.W.2d 182, 184 (1); Public Finance Corp. of Kansas City v. Shemwell, Mo.App., 345 S.W.2d 494, 497; Illinois State Bank of Quincy v. Pedersen, Mo.App., 350 S.W.2d 102, 106. See also Dierling v. Pettit, 140 Mo.App. 88, 94–95, 119 S.W. 524, 527 (5); Local Finance Co. v. Yantis, Mo.App., 152 S.W.2d 989, 990.

president, in acknowledgment of the chattel mortgage, that Anderson-Haley was "lawful owner of said property, in full possession thereof, and (had) good right to mortgage the same," [7] and (b) by the conduct and statements of defendants' attorneys M & P, including the positive representation (according to plaintiff's uncontradicted evidence) that title to the trailer was "in the name of * * * Anderson-Haley" and "was free and clear." Furthermore, defendants did not challenge the legal validity of the chattel mortgage executed by Anderson-Haley [cf. Ashby v. National Bond Finance Co., Mo.App., 343 S.W.2d 218, 222(4, 5)], and the submissibility of plaintiff's cause of action on its so-called "estoppel theory" as hereinbefore outlined [cf. Public Finance Corp. of Kansas City v. Shemwell, Mo.App., 345 S.W.2d 494, 497] was, in necessary effect, conceded by defendants when upon trial they failed to move for a directed verdict and joined voluntarily in submission to the jury with no objection to any of plaintiff's instructions.[8] On that premise of submissibility, we proceed to a particularized consideration of the points in plaintiff's brief.

■■ The first point is that "the court erred in failing to grant plaintiff's motions for a directed verdict and in failing to enter judgment for plaintiff because the uncontradicted evidence shows that defendants were and are estopped to assert a claim to the trailer as against this plaintiff." The *sole* motion for a directed verdict was plaintiff's motion at the close of all the evidence for a directed verdict *on defendants' counterclaim only*. In this state of the record, plaintiff is in no position to complain here that the trial court erred in failing to direct a verdict *on plaintiff's petition or cause of action*.[9] But, if this point were to be ruled on its merits, we would be impelled to deny it. For, where plaintiff has the burden of proof on an issue (as instant plaintiff did on the issue of estoppel) and proof of such issue depends upon oral evidence (as here), plaintiff is not entitled to a directed verdict regardless of whether or not such oral evidence is controverted, because the credibility of witnesses and the weight to be accorded their testimony are for the jury and plaintiff must shoulder the risk of nonpersuasion.[10]

■ In its second point, plaintiff alleges that, for the reasons hereinafter discussed, the trial court erred in giving defendants' instructions 6 and 7. Number 6 closed with conventional verdict-directing language, while number 7 plainly sought the same end by declaring that, upon certain hypothesized findings, "then the trailer became and was the property of defendants." Both instructions obviously submitted upon the theory that *Anderson-Haley* had been "the owner" of the trailer prior to October 14, 1959, but that, on said date, defendants had become

7. "'A mortgagor having the possession and the apparent ownership of personal property confers them upon his mortgagee, who may maintain his right against every one except the real owner, in case the mortgagor is not the real owner.'" National Bond & Investment Co. v. Mound City Finance Co., Mo.App., 161 S.W.2d 664, 668.

8. Harbison v. Chicago, R. I. & P. Ry. Co., 327 Mo. 440, 37 S.W.2d 609, 614(12), 79 A.L.R. 1; Clay v. Owen, 338 Mo. 1061, 93 S.W.2d 914, 916(8); Millar v. Berg, Mo., 316 S.W.2d 499, 502(2); Sides v. Mannino, Mo.App., 347 S.W.2d 391, 394 (3); Edmisten v. Dousette, Mo.App., 334 S.W.2d 746, 750(2); Silberman v. Hicks, Mo.App., 231 S.W.2d 283, 285(3); Lintz v. Atlanta Life Ins. Co., 226 Mo.App. 1087, 49 S.W.2d 675, 677(6).

9. Rule 72.01; Section 510.280; Heideman v. Lorenz, Mo., 349 S.W.2d 230(1, 2); Robbins v. Robbins, Mo., 328 S.W.2d 552, 555(1, 4); Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 606(1); Warren v Weaver, Mo.App., 343 S.W.2d 682, 684–685(3).

10. State ex rel. and to Use of Hickory County v. Davis, Mo., 302 S.W.2d 892, 896(3); Cluck v. Abe, 328 Mo. 81, 84, 40 S.W.2d 558, 559(1–3); Daly v. Schaefer, Mo.App., 331 S.W.2d 150, 154(6); Holtzman v. Holtzman, Mo.App., 278 S.W.2d 1, 4(4–6). See also Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233(7); Beezley v. Spiva, Mo., 313 S.W.2d 691, 695(6, 7).

"the owners" thereof by virtue of the purported *assignment by Haley individually* of the certificate of title issued to and in the name of *R. S. Anderson Co., Inc.* Direction of a verdict by instruction 6 also was predicated upon a finding that defendants "had acquired the ownership of (the) trailer by reason of a certain *bonifide* sale to them for a money consideration from Anderson-Haley." Although (as we have found) Anderson-Haley may have had some "special interest" in the trailer which could have been perfected into legal title, it (Anderson-Haley) was not "the owner" of the trailer; defendants' own testimony negated the idea that there had been a *"bonifide* sale to them for a money consideration from Anderson-Haley"; and, on the record before us, defendants did not become "the owners" of the trailer by virtue of the purported assignment by Haley individually of the certificate of title issued to R. S. Anderson Co., Inc. Thus, instructions 6 and 7 submitted hypotheses for which there was no evidentiary support, thereby offended against an elementary but basic principle, and clearly were erroneous. See the multitude of cases collected in *27* West's Missouri Digest under Trial, ▮

Plaintiff also attacks instructions 6 and 7 (and, under another point, defendants' instruction 5) because they did not negate or refer to "plaintiff's estoppel evidence which was a complete affirmative defense to defendants' claim of ownership" as pleaded in their counterclaim.[11] Counsel have sent us to the broad and unqualified statement that a verdict-directing instruction "offered by a party asserting a cause of action must negative all affirmative defenses separately submitted in other instructions covering them." Missouri Civil Instructions (1961), § 2.2, p. 28. Id., § 5.5, p. 67. No doubt, this is sound, safe advice which the careful trial practitioner would be well-advised to follow. However, the only case cited in support of the quoted statement [Moore v. Ready

Mixed Concrete Co., Mo. (banc), 329 S.W. 2d 14, 22–24(6)] was a tort action in which the affirmative defense of contributory negligence had been pleaded and submitted. It may be "that logic makes the rule equally applicable to all affirmative defenses." Prevost v. Wilkin, Mo.App., 358 S.W.2d 417, 421. But the Kansas City Court of Appeals has pointed out that Moore, supra, did not announce "an instruction rule for all affirmative defenses" and that, in other categories of actions, whether the failure of a verdict-directing instruction to negate an affirmative defense constitutes reversible error should depend upon whether the jury thereby was misled or misdirected when all of the instructions are read together. Prevost, supra, 358 S.W.2d loc. cit. 421; application to transfer denied by Supreme Court 9/10/62, No. 49679. That is the test we would employ if it were either essential or useful for us to determine upon this appeal whether instant defendants' instructions were reversibly erroneous for failure to negate "plaintiff's estoppel evidence." Since the cause must be remanded and upon retrial the criticized instructions must undergo drastic revision anyway, we pass the complaint presently under discussion without ruling it.

▮ In its next point, plaintiff lists five specific respects in which defendants' instruction 5 is alleged to have been erroneous. To the giving of this and other instructions, plaintiff's counsel interposed only a general objection before submission to the jury; and, in its motion for new trial, plaintiff included only one of the five specific objections now urged against instruction 5. That objection was the one upon which we commented in the last preceding paragraph, to wit, that instruction 5 failed "to negate the estoppel defense." Not having been presented to the trial court by specific objection either before submission to the jury or in the motion for new trial, the other

---

11. As we have seen, plaintiff also submitted its cause of action on what it appropriately refers to as an "estoppel theory."

four objections to instruction 5 have not been preserved for appellate review.[12]

■ Plaintiff charges that defendants' instruction 8 was erroneous in three respects. In two respects, i. e., (1) in directing the allowance to defendants of "such sum in damages" as would compensate for the reasonable value of the trailer *"as of this date"* and (2) in authorizing a further allowance for "damage to the trailer," if any, instruction 8 indeed permitted consideration of subjects upon which no evidence had been introduced and thus transgressed the elementary but basic principle to which we heretofore have referred, to wit, that instructions submitting elements, issues or hypotheses for which there is no evidentiary support should not be given. See again the cases collected in 27 West's Missouri Digest under Trial, ■ However, the jury made no finding as to the reasonable value of the trailer and allowed nothing for damage thereto, so it does not appear that the unjustified submission of the noted elements in instruction 8 constituted error "materially affecting the merits of the action," which, standing alone, would require reversal. Rule 83.13 (b); Section 512.160(2).

■ The third complaint leveled at instruction 8 is that it improperly permitted the jury to award damages for loss of use of the trailer. Eschewing indulgence in idle speculation as to the evidence or the findings upon retrial, we confine ourselves to the observation that, generally speaking, "(w)hen property having a use value is wrongfully taken from a defendant, damages for the loss of its use may be awarded" [Stephen Burns, Inc. v. Trantham, Mo.App., 305 S.W.2d 66, 70–71(6–8)], but that, where a defendant deprived of the use of a motor vehicle or trailer could not have operated it lawfully anyway, no recovery for loss of use should be allowed. Robertson v. Snider, Mo.App., 86 S.W.2d 966, 968(3); Desmet v. Sublett, 54 N.M. 355, 225 P.2d 141. See also United Shoe Mach. Co. v. Ramlose, 231 Mo. 508, 541–542, 132 S.W. 1133, 1141–1142(10).

■ Two of plaintiff's points deal with the form of verdict (given as defendants' instruction 9 and returned by the jury as shown marginally)[13] and with the form of judgment. Again, we need not and do not determine whether the form in which the verdict was returned on September 28 and the judgment was entered *fifteen days later* on October 13 would have required reversal, if no other error had been demonstrated on the record; but, in the interest of minimizing the possibility of error upon retrial, we add these brief comments. Our rules of civil procedure [Rules 99.11, 99.12 and 99.14; cf. Secs. 533.110, 533.120 and 533.140] contemplate that the verdict and judgment in a replevin suit (a) will find and declare the prevailing party's right of possession, (b) will determine and assess the value of the property in suit at the time of trial, thus affording to the prevailing party an election to take the property or its assessed value, and (c) will determine and assess damages, if any, for taking and detention. Since the right of possession is the basic and vital issue in the case, the verdict should be responsive to that issue and should require an express finding thereon. Cf. Harrington v. Interstate Securities Co.,

---

12. Rules 79.03 and 70.02; Hanff v. St. Louis Public Service Co., Mo., 355 S.W. 2d 922, 926(4); Overton v. Tesson, Mo., 355 S.W.2d 909, 913–914(6); Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609–610(11–13); Wolff v. Richardson, Mo. App., 358 S.W.2d 112, 116(5); Sullivan v. Hanley, Mo.App., 347 S.W.2d 710, 711 (1).

13. "We, the jury, find the issues in favor of the defendants and against the plaintiff and find that the defendants are entitled to judgment against the plaintiff in the following sum: $——— for the reasonable value of the trailer, its equipment and accessories: $1500.00 for the reasonable value of the loss of use of the trailer and its equipment and accessories: $None for the reasonable value of the damage to the trailer, its equipment and accessories."

Mo.App., 57 S.W.2d 438, 439(5). And, if the losing party has possession of the property in controversy at the time of trial, the evidence should show, and the jury should determine and assess, the value of the property *as of that date*.[14] Clearly, the verdict in the case at bar was not in the form contemplated and required. Furthermore, as we have noted, there was no evidence from which the jury could have found the value of the trailer at the time of trial.

In another point, plaintiff complains of the admission in evidence of defendants' exhibit 2, a Missouri certificate of title to the trailer issued to and in the names of defendants in *August 1960*. The basic and determinative issue in the instant action was the right to possession of the trailer *at the time of institution of suit,* to wit, on *May 3, 1960.* Cindrick v. Scott, 226 Mo. App. 153, 155, 42 S.W.2d 957, 958(2); Blake v. Keiser, Mo.App., 267 S.W. 94, 96. Exhibit 2 was not relevant or material to this (or any other) issue in the case and, upon plaintiff's timely and sufficient objection thereto, should have been excluded.

For the reasons stated, the judgment for defendants is set aside and the cause is remanded for further proceedings not inconsistent with this opinion.

RUARK, P. J., concurs.

HOGAN, J., not sitting.

14. Richey v. Burnes, 83 Mo. 362, 365(2); Vitt v. Baer, Mo.App., 335 S.W.2d 681, 684(4); Huntington v. Jamieson, Mo. App., 50 S.W.2d 705, 707(1). See also Townsend v. Homan, Mo.App., 347 S.W. 2d 460, 461–462(3–5).