**Ralph SULLIVAN, Plaintiff-Respondent,**

v.

**Roy HANLEY, Defendant-Appellant.**

No. 7930.

Springfield Court of Appeals.

Missouri.

June 6, 1961.

Rehearing Denied June 29, 1961.

Roberts & Roberts, Farmington, for defendant-appellant.

Bloodworth & Bloodworth, Ted M. Henson, Ted M. Henson, Jr., Poplar Bluff, for plaintiff-respondent.

ELMO B. HUNTER, Special Judge.

This action arose out of an automobile collision which occurred about 5:15 p. m. on March 21, 1957, at the intersection of Highway 67 and Vine Street in Poplar Bluff, Missouri, between a 1956 Chevrolet automobile being driven in a southerly direction on Highway 67 by defendant-appellant Roy Hanley, and an automobile being driven in a westerly direction on Vine Street by plaintiff-respondent Ralph Sullivan.

The suit was filed in Butler County and on a change of venue was transferred to Stoddard County. The trial resulted in a jury verdict and judgment for plaintiff for $6,000.

On this appeal defendant presents five contentions of error. We shall consider them in the order presented, and discuss the evidence only to the extent necessary to an understanding and disposition of the particular contention.

Defendant's first contention is that the trial court erred in giving Instruction No. P–1 because "it erroneously defines defendant's duties under the law by fixing the time of plaintiff's peril as immediately before the collision and requiring defendant to avoid the collision after discovering plaintiff's position of peril at that time."

This case was tried on June 7, 1960, and Civil Rule 79.03, effective April 1, 1960, V.A.M.R., is applicable. The pertinent provisions read: "Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for a new trial; * * * Where definite objections or requests were made during the trial in accordance with Rule 79.01, *including specific objections to instructions,* a general statement in the motion of any allegations of error based thereon is sufficient. *If any specific objections to instruction have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review.*" (Italics ours).

This rule changed the former practice of assigning generally error in instructions, and requires not only that an instruction be objected to prior to the submission of the case to the jury but also that either before submission to the jury or in the motion for new trial the party objecting must make a specific objection to the instruction; otherwise the objection is not preserved for appellate review. Thus, if a general objection to the instruction is made before submission to the jury then it is necessary to include a specific allegation of error in the motion for a new trial in order to preserve the objection for appellate review.

Under this rule and Rule 70.02 specific objections to instructions may be made wholly before submission to the jury, wholly in the motion for a new trial, or partly before submission and partly in the motion for a new trial. Unless this specific objection is timely made it is not preserved for appellate review.

According to the transcript, prior to the submission of the case to the jury the defendant made only a general objection to

the various instructions. In defendant's "Motion for a directed verdict, or in the alternative for a new trial" the objection to Instruction P–1 was: "1. Said instruction does not properly declare the law." Four additional specific reasons were given in the motion for a new trial as to why Instruction P–1 was objectionable, but none of them contained the reason or objection which defendant presents in his brief as his first assignment of error.

Since defendant has failed to include his present specific objection to Instruction No. P–1 either in his objections to instructions made prior to submission of the case to the jury, or in his motion for a new trial, the matter is not preserved for appellate review.

■ Defendant's next complaint against Instruction No. P–1, which complaint was properly preserved by specific objection in the motion for new trial, is that there was no evidence that defendant could have swerved and that thus the instruction was not supported by evidence. The instruction read: "* * * with safety * * * have swerved said Chevrolet motor vehicle and stopped the same * * * (and) thereby prevented said collision. * * *"

Plaintiff placed defendant approximately fifty feet from him when plaintiff first saw defendant. At this time plaintiff's car was in the path of defendant's car and in the intersection in the southbound lane of Highway 67 traveling west about five miles per hour. The front wheels of plaintiff's car were in the middle of defendant's lane of travel. Defendant concedes that at this time plaintiff was in a position of imminent peril. There was testimony to the effect that at the speed defendant was then traveling defendant could have stopped his car just short of an impact even if defendant had continued on in a straight path. Plaintiff stopped his car with its front wheels at the west edge of Highway 67 "to let Mr. Hanley swerve into Vine Street. Q. And was he turning at the time you stopped, into

Vine Street? A. Yes, Sir." That defendant was turning some is further supported by the testimony of plaintiff that "His (car's) left front struck my right front."

To defendant's right (west) was an expanse of smooth concrete which cars could and did use. On this concrete at an unspecified distance to the west of the point of impact was a fire plug and telephone pole. West of them was a continuation of this smooth cement area. There was testimony to the effect that it is 34 feet and 6 inches from the middle of Vine Street to the curb where the fire plug was located. Plaintiff's exhibits B and C are large, clear pictures of the intersection showing the location of this smooth concrete area and of the fire plug and telephone pole thereon. Plaintiff's Exhibit A is a scale drawing of the highway intersection and its approaches. While it may be that there is no specific evidence of an unobstructed path into which defendant could have swerved and *kept going,* it is clearly evident that by swerving some to his right, as plaintiff testified defendant was commencing to do, defendant would have had a longer distance within which to stop before the path of his vehicle would have crossed the path of plaintiff's vehicle than defendant would have had if he had kept on going straight south without any swerving. Since there was evidence to the effect that defendant without swerving could have stopped in time to have prevented the accident it is obvious that by a combined swerving and stopping operation defendant at least to some extent would have a better opportunity to avoid the collision. Thus, there was evidence from which the jury could find that defendant by an effort both to swerve and to stop could have prevented an impact of the two automobiles. See, Nelson v. O'Leary, Mo.Sup., 291 S.W.2d 142, 147(506); Davidson v. King, Mo. App., 309 S.W.2d 132, 137. We find no merit in defendant's contention to the contrary.

■ Defendant's third assignment of error, specifically mentioned in his motion for

a new trial, is that the trial court erred in giving Instruction No. P–3 because it misdirects the jury by telling them to estimate damages, thereby giving it a roving commission to assess damages according to its own estimate and speculation and not according to the law and the evidence. The instruction reads:

"The Court instructs the jury that if you find the issues in favor of the plaintiff, Ralph Sullivan, you will assess his damages as such sum as you find and believe from the evidence will compensate him for the injuries, if any, sustained by him as shown by the evidence; and in *estimating* such damages you will take into consideration the physical injury, if any, inflicted; the bodily pain, if any, and mental anguish, if any, which he has endured and suffered and which he is reasonably certain to endure and suffer in the future; the character and extent of his injuries, if any, and whether they are temporary or permanent; the reasonable and necessary sums, if any, which he has expended for medical and hospital expenses by reason of such injury, if any." (Italics ours).

In Webster's New International Dictionary the verb estimate is defined as "to fix the worth, value, size, extent, etc. of, esp. roughly or in a general way." The noun "estimate" is defined as meaning: "Act of valuing, or appraised value, 2. a judgment or opinion usually implying careful consideration or research * * * 3. a judgment made by calculation, esp. from incomplete data; rough or approximate calculation."

It is to be noted in favor of the instruction that it requires the damages to be assessed (determined) *from the evidence*. In this respect the instruction is distinguishable from that considered in Petty v. Henroid, Mo.Sup., 313 S.W.2d 688, 690, wherein the court held that instructing the jury it could "take into consideration your common knowledge and experience in life" was reversible error because it encouraged the jury to take into consideration whatever other conceivable elements outside the evidence they wished in connection with those the court had enumerated.

■ It is well known that as a pratical matter a jury has no positive and specific dollar value schedule or precise mathematical formula to use in determining the damages to be given as reasonable compensation for the physical injury and bodily pain experienced in any particular case. See, Faught v. Washam, Mo.Sup., 329 S.W.2d 588, 602(27). Yet the very difficulty of the task the jury must perform in determining fair compensation for bodily injury and for pain and suffering demonstrates the need for the jury to confine its considerations to the evidence and to avoid guesswork and speculation as such. The use of the word "estimating" in the instruction may have some possible tendency to depreciate the accuracy of calculation intended to be conveyed to the jury by a proper measure of damages instruction. For that reason the word "estimating" should not be used as here, and in lieu of it the word "determining" is suggested. This would avoid the criticism made of the instruction. Cf. Gennari v. Prudential Life Insurance Company of America, Mo.Sup., 335 S.W.2d 55(10–11).

Even so, we are unwilling to hold that in this particular case the use of the word "estimating" in the instruction was prejudicial so as to require a reversal. Rather, we have concluded that such a holding would be hypertechnical. There is no assertion that the damages awarded were excessive or beyond the evidence, and if plaintiff's medical testimony is accepted, the amount awarded appears reasonable. We are admonished by Section 512.160, subd. 2 RSMo 1949, V.A.M.S., that "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." It is our conclusion that the error complained of

did not materially affect the merits of this action.

■■ Defendant next charges the trial court with error in allowing plaintiff's counsel in his closing argument to argue to the jury concerning plaintiff's injuries and the extent of his damages when plaintiff's counsel did not mention these points in his opening argument.

The transcript reveals that in the opening argument plaintiff's counsel addressed himself to the subject of liability, and made no mention of the injuries involved or of the amount of money he was requesting as damages. In his closing argument, which is not set out in full in the transcript, defendant's counsel apparently addressed himself principally to the issue of liability but did refer briefly to the testimony that plaintiff's doctor, Gernstetter, stated he saw plaintiff only a total of thirteen times from the time plaintiff left the hospital. Thereafter, plaintiff's counsel in his closing argument after addressing himself for awhile to the subject of liability said, "Now this man has serious injuries. The doctor here—

"Mr. Roberts: Just a minute. If the Court please, I object to any argument at this time about any injuries or any amount of money, for the reason there was nothing said by the plaintiff in his opening statement to that effect.

"The Court: Overruled.

"Mr. Roberts: Note our exception.

"Mr. Bloodworth: The Court tells you, ladies and gentlemen of the jury, if you find the issues for the plaintiff in estimating his damages take into consideration the physical injuries, P–3, the bodily pain and mental anguish, whether his injuries are permanent or temporary; and of course the doctor, and uncontradicted, ladies and gentlemen of the jury, told you he had a permanent injury. This man has wore three types of harness. He's been in pain, has a permanent injury. He has doctor bills amounting to $937.28, and the Court tells you in arriving at a verdict you take into consideration the reasonable and necessary sum he expended for medical aid, in this instruction." Additionally, plaintiff's counsel said, " * * * there's not a man or lady on this jury which would take fifteen thousand—Mr. Welborn: Wait a minute. I object to what anybody on the jury would take, that's a very unfair argument. The Court: Objection sustained, immaterial."

■ It has long been recognized that the custom and certainly the better practice for plaintiff's counsel in his closing argument and prior to defendant's counsel's closing argument is to cover at least generally his principal contentions so as to give defendant's counsel a fair opportunity to discuss them. It is stated in 88 C.J.S. Trial § 169, p. 339, that "It is the duty of counsel having the burden of the issues to present the whole case as he relies on it in his opening argument, and the opposing attorney may then discuss the propositions he (plaintiff) has presented and present his (defendant's) own views of the case, after which, in conclusion, counsel having the burden should, in his reply, be confined to the points, grounds, and authorities exhibited; but the fact that he is not confined to a strict reply to the arguments of opposing counsel is not a fatal error where it does not appear that he was permitted to wander from the issues in the case." It is stated in 53 Am. Jur., Trial, Sec. 462, page 366: "However, the rule just stated as to the opening argument of the plaintiff is not often observed and enforced." In Goldstein v. Fendelman, Mo.Sup., 336 S.W.2d 661, 667, Judge Hyde in discussing the effect of the failure of plaintiff's counsel in his opening argument to state what amount of money he was asking the jury to give, stated: " * * * while we recognize that the trial court has considerable discretion in the matter of arguments of counsel, we consider it unfair and improper to permit plaintiff's counsel to do this for the first time in his closing argument, when defendant's counsel has made no argument as to amount", citing Votrain v. Illinois Terminal R. Co., Mo.

Sup., 268 S.W.2d 838, 844; 88 C.J.S. Trial, § 169, p. 339, and Supreme Court Rule 4.22. See, also, Friedman v. United Rys. Co. of St. Louis, 293 Mo. 235, 238 S.W. 1074, 1077 (10). In the Goldstein case the court held that the point was waived because of lack of timely objection.

The most recent case on the subject in this state is Shaw v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 344 S.W.2d 32. In that case plaintiff's counsel discussed only the subject of liability in his opening argument. He concluded by saying he had "some other points" that he wanted to develop. Thereupon the following occurred: "Mr. Ely: Now, before Mr. Gershenson stops, if the Court please, at this time I would like to serve notice that if Mr. Gershenson expects to raise any new points in his final argument that I would object to them at that time because I will not be given any opportunity to answer them, and I ask that he at this time make all his points. If he has any damages to argue, or anything else, I would like to have an opportunity to answer them. The Court: Overruled." Thereafter, over additional timely objection plaintiff's counsel spent a considerable part of his time arguing the matter of injuries and damages. Judge Eager writing for the Supreme Court stated: "In our present case not only was the statement of the amount claimed withheld for the concluding argument, but the entire argument on injuries and damages was so withheld. This was done knowingly, and after full and complete warning. As stated at various times, the legitimate purpose of the closing argument is to answer the argument of the party "holding the negative," usually the defendant. We recognize that there may be cases where a point has been inadvertently overlooked in the opening and, in the court's discretion, it may be permissible to supply it later; and it seems that the courts have a certain amount of discretion in refusing or permitting a closing argument when the defendant has waived his argument. Fried-

man v. United Rys. Co. of St. Louis, supra. Counsel for defendant places considerable reliance upon our Rule 4.22, V.A.M.R. to the effect that candor and fairness require that one should not mislead his opponent by "concealing or withholding positions" in his opening argument. Taking his cue from this, plaintiff's counsel cites nine instances occurring in the pre-trial or trial procedure which, as he says, show that defendant was not deceived but, on the contrary, knew that injuries and damages would be discussed. We are not dealing here with a question of notice to defendant; and we need not decide here whether or not the rule was knowingly violated. See, on the rule, Cumming v. Allied Hotel Corp., Mo.App., 144 S.W.2d 177, which illustrates some permissible latitudes. It is not practicable to lay down a hard and fast rule governing all cases, in all their varying circumstances; we do not attempt to do so here. But we do hold, here and now, that the party having the affirmative of the issues in a suit such as this may not, after full notice and warning, withhold all argument on the vital questions of injuries and damages; we further hold that the trial court abused its discretion in permitting this argument in the reply, and that, under the circumstances of this case, the error was prejudicial. There was no waiver. The issue here is not merely whether the verdict was thus rendered excessive, as plaintiff now contends. No one can say what verdict this jury might have returned if the arguments had proceeded in the regular course, and if defendant's counsel had been permitted to answer the argument on injuries and damages. We hold that this error would necessitate a reversal, independent of other points raised. Counsel having the affirmative will be held to the requirement of fairly stating his essential points in the opening argument, at least to the extent that the defendant may fairly answer them; and a failure to require this will ordinarily constitute error, if the point has been properly raised at the time and preserved.

Each case must be determined upon its own peculiar facts. In the case before us although plaintiff's counsel in his opening argument did not mention personal injury, defendant's counsel in his closing argument did make the mentioned remark about plaintiff's doctor's testimony concerning the number of times he saw plaintiff. Certainly in his closing argument plaintiff was entitled to go into that subject. Thus, the objection upon which the court was called to pass was too broad in endeavoring to exclude any argument about any injuries. Nor was there any notice to plaintiff's counsel at the close of the opening argument that defendant's counsel was insisting upon literal compliance with what until the Shaw case had been more a custom policed by the trial judge than a strict rule with appellate court reversal the penalty.

There are some additional considerations, which although not in and of themselves controlling are noteworthy. As we read the record defendant was reasonably well informed as to plaintiff's medical contentions by the very evidence that plaintiff had adduced. Defendant did not ask for any opportunity to reply to newly mentioned items in the closing argument of plaintiff's counsel. See, 88 C.J.S. Trial § 169, p. 339, note 63. We are unconvinced that defendant was surprised or "sandbagged" by the very general and brief remarks touching on damages and personal injury which we have set out in full. And, as mentioned there is no complaint made on this appeal that the sum awarded as damages for the personal injuries suffered was excessive.

The facts inherent in this case distinguish it from the Shaw case. In view of defendant's counsel having made some mention of the medical situation, the trial judge technically was correct in his refusal to sustain a general objection to "any argument about any injuries". If as a more practical matter we view the ruling as an exercise of the trial judge's discretion in permitting the objected to argument, on this record we find no abuse thereof sufficient to invoke the penalty of a reversal. As to the endeavor of plaintiff's counsel to mention $15,000, the trial court properly sustained the objection made by defendant's counsel.

■ Defendant's final objection is to the trial court's action in permitting Witness Howard Rhodes' testimony as to the result of certain experiments concerning stopping distances. Defendant concedes such testimony is admissible in the sound judicial discretion of the trial court when it is shown that the experiments were conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in suit, but contends that under the evidence no such essential showing was made. See, Faught v. Washam, Mo.Sup., 329 S.W.2d 588, 598.

Witness Rhodes, for fourteen years a member of the Missouri State Highway Patrol, testified in some detail as to his schooling, training and experience in conducting tests to determine the required stopping distances for automobiles being driven on public ways. He stated that he conducted a stopping distance test during a hard rain at the scene of the accident on Highway 67 at its intersection with Vine Street on August 17, 1959. He used a 1956 Chevrolet automobile in good mechanical condition, with good hydraulic brakes, good tires and good tread. The tests were conducted at speeds of 20 and 25 miles per hour, and the respective stopping distances were 38 feet 4 inches and 47 feet 1 inch. Defendant earlier had testified that he had approached the intersection at a speed of 20 or 25 miles per hour.

Defendant concedes the test was conducted at the same geographic location, with the same model car, and in the rain with a wet pavement as had been the condition at the time of the accident. Also that both the cars involved in the accident and the test car were described as having good brakes, good tires and being in good mechanical condition. Defendant also concedes that "possibly the conditions, in most cases, might be classified as substantially the same. However, in the case at bar the margin be-

tween the time available for stopping and stopping distance is extremely thin (50 feet) * * * (that) where the margin is so slight, the similarities between the accident and the conditions at the time of the experiment should be made extremely exact." Defendant suggests some of the factors about which there was no evidence of similarity are: (1) Air pressure in the tire (which may effect stopping distances); (2) the condition of the highway as to existence of oil, film or debris; and (3) reaction time (the patrolman knew when he reached a certain point he would be expected to take his foot away from the accelerator and put on the foot brake). These are essentially the same contentions as were unsuccessfully made and fully answered in the Faught case, supra. Generally, experimental evidence is admissible in the sound judicial discretion of the trial court, when it is shown that the experiment was conducted under conditions substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in suit. It is not required that the conditions surrounding the experiment should have been precisely identical with those surrounding the occurrence under investigation; and if the conditions were substantially similar, the differences in condition are for the jury in evaluating the weight to be given such evidence. We do not find any abuse of discretion on the part of the trial judge in his ruling. In passing, we note that defendant's counsel did an outstanding job of cross-examining Witness Rhodes on the mentioned possible differences and their effect on stopping distances, and the jury had these matters before it at the time it evaluated the testimony of Witness Rhodes.

For the reasons stated, the judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

RUARK, J., not participating.