Sandra Geraldine GOINS, Plaintiff-Respondent,

v.

Edward A. O'KEEFE, Jr., Defendant-Appellant.

No. 32500.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Hocker, Goodwin & MacGreevy, John M. Goodwin, Donald J. Stohr, St. Louis, for defendant-appellant.

George G. White, Donald M. Witte, Brentwood, for plaintiff-respondent.

RUDDY, Judge.

Defendant appeals from a judgment in the amount of $1250 for damages for personal injuries sustained by plaintiff resulting from an automobile collision. The automobile driven by defendant collided with the rear of an automobile driven by plaintiff. Defendant admitted responsibility for the collision, therefore, the only issue submitted to the jury was whether plaintiff sustained injuries, and if so, the amount of damages to be awarded for the injuries sustained.

The first point relied on by defendant is that the trial court erred prejudicially in giving and reading to the jury the measure of damages instruction offered by plaintiff which was MAI 4.01 and which contained the phrase, " * * * and is reasonably certain to sustain in the future * * *." In this same point defendant complains that the trial court erred in permitting plaintiff's counsel to argue before the jury the issue of permanent injury as an element of damage, contending that there was no evidence in plaintiff's case to support the submission of any damages which plaintiff " * * * is reasonably certain to sustain in the future * *" and that there was no evidence to support the argument that plaintiff had sustained a permanent injury.

Plaintiff, in her testimony, described what happened at the time of the impact. She said her body "was jerked" backward, then forward, and then backward. Her right knee struck the dashboard, her chest struck the steering wheel, and her head went down so far that her chin struck her chest. She was wearing an attachment in her hair at the time, she described as "a ponytail." After the impact she found that the "ponytail" had become disengaged from her hair, and was in the back seat. She described the ponytail as a regular false hair piece. She had it pinned on with clasps and ribbon. Immediately following the collision defendant asked plaintiff if she was hurt, and she told him " 'No, I don't think so.' " She told a police officer she did not think she was injured. However, later that evening, after she had arrived home she felt sore and stiff and developed a headache. She said she laid down because she was getting dizzy. She noticed that her right knee was cut and it began to pain her. Also, her back began

to pain her. Her neck had swollen and she could not move it. It was very sore and stiff. The chest was swollen and bruised where her chin had struck her chest. She said her busts were blue and were sore. The evening of the accident she began to take aspirin and other medicine for the pain.

The accident occurred on Tuesday, July 2, 1963, at approximately 5:30 P.M. Plaintiff did not seek medical attention for her injuries until July 5th. She said she could not see her doctor on Wednesday, July 3rd, because that was his day off, and the 4th of July was a holiday, so she waited until the next day. She then went to see Doctor Walter R. Johnson. At the time she visited Doctor Johnson, she had headaches and a constant pain in her back. She could get no relief. Her knee was swollen and remained swollen about one and one-half weeks. She saw Doctor Johnson five or six times. She thought he gave her about ten prescriptions for medicine. On his advice she purchased a corset for support to her back. She wore the corset three or four months but it did not help her. She said she did not have any headaches prior to the accident unless she was sick or had some type of illness.

About September 1, 1963, she saw a Doctor James H. Utley. At the time of her first visit to Doctor Utley her head was still hurting and her back was still paining. She said her knee had "cleared up;" however, her chest was still a little sore, explaining that the swelling in the chest had gone down, but that the bruises were still apparent. She saw Doctor Utley about five times.

At the time of her testimony, she said that since seeing Doctor Utley, and up to the day of the testimony, she had experienced backaches; and, while she no longer had them constantly, they still returned and that she had one within the month prior to her testimony. She said she had a pain in her back when she saw Doctor Douglas A. Ries just a few days before the trial. When she was asked if she was still bothered with any pain in her neck area, she said, "Well, the neck area pains mostly come at night when I am trying to sleep." She said she could not sleep on a pillow and had difficulty sleeping without a pillow. She testified that the condition in her neck had not gone away, and that she still had very bad headaches about twice a month. She said the taking of bufferin or empirin relieved it for a short period only. She explained that while the swelling in her knee had subsided, constant walking or shopping would cause it to hurt. She said because of her pack pains and her headaches she can not perform her normal household duties properly. Between the time of the accident and the trial of the case, plaintiff gave birth to a child on August 4, 1964. Plaintiff experienced backaches during her pregnancy. She said while carrying her older children during pregnancy, she did not experience backache; except with the first child, but said that backache was nothing in comparison with the backache she experiences now. She saw Doctor Johnson again the night before the trial.

Doctor Walter Johnson first saw plaintiff on July 5, 1963. Plaintiff complained of pain and stiffness in her chest, neck, and back. His examination showed that the chest was discolored and slightly red and swollen; plaintiff's skin was rather tight and firm and tender to the touch; the posterior part of her neck was swollen, discolored, and tender and palpation revealed spasms of the cervical muscle; the turning of her head was painful; plaintiff's back was swollen, slightly discolored along the lower part, and there was tenderness in the lumbo sacral area, where the spine is joined to the pelvic bones of the back. Upon pressure there was a generalized spasm of the superficial muscles extending from the border of the ribs to the iliac crest. She experienced some pain in a leg raising test. He prescribed some pain killer, skeletal muscle relaxant and an enzyme to help reduce swelling. He told her to

go to bed and to remain in bed until most of the symptoms had subsided. He took no x-rays because there was not enough evidence to suspect possibility of a fracture or dislocation. He diagnosed her injuries as a lumbo sacral strain at the lumbo sacral joints, a strain of the lumbo muscles; a strain of the posterior neck muscles and contusion of the anterior chest wall. He saw plaintiff seven times, the last visit for treatment was on August 30, 1963, at which time he said his diagnosis was not changed. He did not discharge plaintiff, but she did not come back. Doctor Johnson saw plaintiff the night before the trial and said she complained of having pains in the neck and in the back which were brought on by activity and the stress and strain of long standing. He testified that, " * * * when one has had an injury to the spine, the neck, all the lumbar area, lower part of the spine, it is difficult to cure. And you may expect that symptoms may present themselves depending on other variables and other conditions for the rest of their life." He testified that with reasonable medical certainty it could be said that plaintiff would have these pains in the future, and when he was asked if there was anything that could be done to make the pains disappear completely he answered, "Only temporarily."

"Q. Can you correct the injury or the harm that has been done to the body?

"A. No.

"Q. And would you say, Doctor, that there has been a permanent injury to Mrs. Goins as a result of these injuries?

"A. Yes, I would say so.

"Q. Do you feel that she may require future medical treatments?

"A. Yes, I feel that she may require future medical treatments."

When asked if the ordinary aging process would have any effect on her injuries in the future, he said, "With reasonable medical certainty you would expect that they would get worse; but this does not hold true with every individual, this is just based on statistics."

The records of Doctor James H. Utley were introduced into evidence and identified by a witness who said she was an assistant to Doctor Utley. The records show that plaintiff saw Doctor Utley for the first time on September 10, 1963. His diagnosis was stiffness of the neck, with limitation of motion on the right, and that she had a sore throat for two weeks prior to the time she came in for her visit. On her second visit, September 17, 1963, her throat was still sore, and she complained that her right ear hurt. Doctor Utley again saw plaintiff on the 24th, 27th and 30th of September 1963.

Doctor Douglas A. Ries, presented as a witness by defendant, testified that he examined plaintiff at the request of defendant on November 1, 1965. He was unable to find any objective evidence of any abnormality or disability that he could attribute to an incident occurring on July 2, 1963, other than a small scar on the front of the right knee of plaintiff. He said the scar was superficial, non-tender and non-constricting and that she could move her knee freely. X-rays disclosed no evidence of injury to any part of the body.

Defendant contends there is not a shred of evidence, beyond plaintiff's present subjective complaints of occasional backaches, pains in her neck and headaches twice a month, that she suffered any permanent injury from the collision. Further, defendant points out in support of his contention, that plaintiff had no medical attention or treatment for a period of over two years before the trial.

Plaintiff's testimony shows that at the time of the trial she was having backaches and pains in her neck area. She continued to have bad headaches about twice a month

and, although the swelling in her knee had gone, prolonged walking caused it to hurt. These conditions diminished her ability to perform her household duties. She experienced none of the aches, hurts and pains before the accident.

Doctor Johnson said the injuries to the spine, neck, and the lumbar area are difficult to cure and that symptoms in these areas will present themselves for the rest of plaintiff's life. His opinion, based on reasonable medical certainty, was that plaintiff would have these pains in the future, and that her injuries are permanent. He said that nothing could be done to correct the injury or harm to her body, and that future medical treatment could only afford temporary relief.

The believability of plaintiff's testimony and that of her medical witnesses was for the jury and we think that the evidence we have related heretofore was sufficient to raise a jury question whether plaintiff is reasonably certain to sustain pain in the future and was sufficient to permit argument to the jury on the permanent nature of her injury. In connection with the aforesaid contention of defendant, there is no merit to his statement that plaintiff was not permanently injured because there was no objective evidence of any abnormality or disability in the plaintiff other than a small scar on her knee. Defendant cites no authority to support this, but it seems obvious that one can receive a permanent injury to the muscular structure of the body which may not show objectively, but will manifest itself in a subjective manner. As we have said there is no merit to this contention.

Defendant next contends that the trial court erred prejudicially in overruling his objections to certain portions of plaintiff's closing argument. In the closing argument, plaintiff's counsel told the jury,

"* * * You are the ones who are going to decide whether she gets what she rightfully deserves in the way of damages.

Mr. Goodwin has already indicated from his zero amount that he has put in his instructions, the Two Hundred and Fifty, then Three Hundred then Five Hundred. Give him more time he would probably be up to Three or Four Thousand Dollars."

Mr. Goodwin, defendant's counsel, made the following objection: "That is not proper; I wouldn't; I object to it; I wouldn't pay her Three Thousand Dollars ($3,000) on a whole city block." The court overruled the objection and we think properly so, because in defendant's portion of the argument, defendant's counsel told the jury that if plaintiff "* * * sustained injury at all, it is so trivial that it isn't worthy of being the subject of a lawsuit at all." Later in his argument defendant's counsel told the jury,

"* * * This case has a reasonable value for settlement of about Two Hundred and Fifty Dollars ($250). We have been willing to talk about settlement since the day after it happened. We get a Fifteen Thousand Dollar ($15,000) suit. We have spent the money to defend it with x-rays, with a doctor. Whatever verdict you bring back, we will have to pay the costs of this whole action. * * * We are not here because the defendant is not willing to pay Two, or Three, or Four, or Five Hundred Dollars to get rid of this case. We are here because they want something they are not entitled to. And I would rather—and I know you would too—spend the money in seeing the right thing done than give into this sort of thing. * * *"

We see nothing prejudicially erroneous in the retaliatory argument of plaintiff's counsel.

The next portion of plaintiff's closing argument, objected to by defendant, was when plaintiff's counsel told the jury,

"Secondly, you heard Mr. Goodwin try to get Doctor Johnson to say that at any time Mrs. Goins was given antibiotics;

if he thought for a second that Doctor Johnson lied on that stand he would have had Doctor Ries testify to this record. He probably had Doctor Ries look at this record.

"MR. GOODWIN: Just a minute, please; Counsel knows I cannot have Doctor Ries testify from some other doctor's records. He objected to it when I asked Doctor Johnson about this record. That is not a fair argument."

The trial court said: "Objection overruled; this is argument." The fact is no objection was made. While there was nothing in the record to support the statement that Doctor Ries had looked at the record of Doctor Johnson, we do not think the argument is prejudical because defendant's counsel in his argument raised the question whether plaintiff's sore throat was caused by the accident.

■ Near the close of his argument plaintiff's counsel told the jury,

"Just how much money you people are going to bring in, I don't know; I do know it should be a lot more than the Two Hundred and Fifty, Three Hundred or Five Hundred that Mr. Goodwin has talked about. As I have stated before, when I opened my closing argument, I don't think this case is worth Fifteen Thousand Dollars ($15,000) but we did that to protect our client; that is our job in protecting our client in case her condition took a turn for the worse, to prevent someone like Mr. Goodwin from coming in here—she might become paralyzed from the waist down—

"MR. GOODWIN: I object; this woman is not paralyzed from the scalp down.

"THE COURT: Overruled."

Plaintiff's counsel then told the jury, "I believe the pain and suffering Mrs. Goins has gone through today and will go through in the future is worth no less than Four Thousand Dollars ($4,000) * * *."

As is shown heretofore, defendant's counsel was the first to tell the jury that plaintiff's prayer in the petition was for Fifteen Thousand Dollars ($15,000). We think this portion of plaintiff's argument was an attempt to explain why the suit was brought for Fifteen Thousand Dollars ($15,000), pointing to the fact that at the time the suit was brought the extent and nature of plaintiff's injury was not then fully known, and that the suit was brought for the sum indicated in order to protect the client against any unknown condition that might arise. We think plaintiff's attorney was entitled to explain why the suit was brought for Fifteen Thousand Dollars ($15,000) in view of defendant's injection of this sum into the case. We do not think this statement in any way prejudiced the minds of the jurors, inasmuch as they knew that plaintiff was not seeking damages for any paralysis from the waist down. We find no prejudicial error in the court's ruling.

As we have pointed out at the beginning of this opinion, defendant had admitted responsibility for the accident and the only issue for the jury was one of damages. We find no error in the giving of instruction No. 5 by the trial court and no error in permitting plaintiff's counsel to argue the issue of permanent injury as an element of damage; nor, do we think any portion of the closing argument of plaintiff's counsel was prejudicially erroneous. The modest amount of the verdict brought in by the jury supports our conclusion. The judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.