MIDWEST LIBRARY SERVICE, INC., a
corporation, Plaintiff-Appellant,

v.

STRUCTURAL SYSTEMS, INC., a corpo-
ration, Defendant-Respondent.

No. 38442.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 4, 1978.

Motion for Rehearing and/or Transfer
Denied May 9, 1978.

Bernard A. Barken, St. Louis, for plaintiff-appellant.

Robert H. Burns, Cyril J. Clancy, Clayton, for defendant-respondent.

STEPHAN, Judge.

Midwest Library Service, Inc., appeals from a judgment entered upon a jury verdict awarding it $1.00 on its claim for damages for breach of contract. The jury also found for Midwest and against respondent Structural Systems, Inc., on the latter's counterclaim. Structural Systems did not appeal. We reverse and remand for a new trial. The parties will be referred to by names or as they were designated in the trial court.

Plaintiff is a book wholesaler which contracted with defendant for the construction of an addition to its existing warehouse facilities in St. Louis County. Plans and specifications were to be provided by defendant which is engaged in the business of designing and erecting pre-engineered metal buildings. Plaintiff moved into the addition early in October, 1973.

Problems were encountered with the addition from the beginning. In May of 1973, shortly after construction had begun, one of the foundation walls of the new building buckled and started to collapse; inspection by an independent consulting engineer, a Mr. Jay Lapin, revealed that the problem was caused by the omission of metal tie bars from those walls. Then, about the time plaintiff moved into the addition, leaks were noticed in the roof of the addition and around the guttering which joined the new building with the old one. In November, 1973, about a month after plaintiff had moved in, a heavy rain overflowed the guttering system, spilling into the addition near its juncture with the old building and causing damage to books and supplies stored in that area.

As a result of this overflow, plaintiff again engaged the services of Mr. Lapin, the engineer. Mr. Lapin was asked to check the guttering system and the rest of the addition to determine whether the plans and specifications agreed upon in the contract were satisfied. Based on the findings of that inspection, a reinspection in June of 1974 and a core sampling of the concrete floor taken by a testing laboratory, Midwest filed this action for breach of contract after a number of alleged defects in the building went unremedied by Structural Systems.

In its petition, Midwest charged that defendant breached its contract by constructing the addition in a "defective, unskillful and unworkmanlike manner." Specifically, it alleged that defendant, inter alia, "designed and installed a defective and inferior guttering system, that it failed to install a

vapor barrier underneath the concrete slab of the warehouse, that it failed to provide a four inch rock fill under said slab and failed to install two concrete headwalls, that it failed to adequately fireproof the columns in the building so as to provide a two hour fire rating, and installed a metal inlet instead of concrete, all as required by the contract and specifications." Midwest sought actual damages of $61,107.23. This figure was composed of $25,307.00 for the alleged defects and omissions in the addition, $26,079.40 for its costs in moving and storing its inventory while the defects were to be remedied and $9,720.83 for the damages to the books and supplies caused by the rain. The prayer was subsequently increased by $12,360.00 to a total of $73,467.23 to cover the cost of moving back into the addition.

Structural denied the essential allegations of the petition and filed a counterclaim for the $7,496.80 balance allegedly still due it under the contract. As noted, the jury returned a verdict for Midwest for $1.00 and found against Structural on its counterclaim.

On this appeal, Midwest claims that the trial court erred when it refused to permit Midwest's counsel to discuss the issue of damages in detail in the concluding part of the closing argument. We agree and hold that such error warrants a new trial. In the opening part of that argument, plaintiff's counsel had addressed only the issue of defendant's liability under the contract, not mentioning either the total amount of damages claimed or any of the component elements of that claim. Defendant's counsel objected when the attorney for plaintiff attempted in the concluding portion of the argument to discuss the claim of $25,370.00 for defects in the building. That objection was sustained by the trial court.

■ A plaintiff normally may not, in the second part of his closing argument, introduce an issue which he has not addressed in the opening part. *Shaw v. Terminal Railroad Association of St. Louis,* 344 S.W.2d 32, 36 (Mo.1961). Nevertheless, a defendant may waive this rule by introducing an issue

himself in his closing argument, thereby opening up that issue and allowing plaintiff in the reply part of his argument the opportunity to respond on that point. *Sullivan v. Hanley,* 347 S.W.2d 710 (Mo.App.1961); *Barrett v. Morris,* 495 S.W.2d 100 (Mo.App. 1973).

■ Defendant concedes that its counsel did, on several occasions in the closing argument, refer to the amounts plaintiff was claiming. However, this concession is qualified by the contention that such references did not constitute a waiver for the reason that counsel discussed damages only in broad, general terms and that plaintiff was therefore rightly foreclosed from going into a breakdown of the elements of his claim. We cannot agree.

Defendant's counsel, on three separate occasions in his closing argument, mentioned the total dollar amount of plaintiff's claim. Twice those comments came in the course of arguments to the effect that plaintiff's case had focused on minutiae and that the numerous small alleged defects in the building could not possibly support a claim for over $73,000.00 when added together. Furthermore, defense counsel himself discussed one of the elements of that claim, the $9,720.83 sought by plaintiff for rain damage to its books.

We do not believe that plaintiff's reply to these arguments is properly restricted to the mention of, and refutation of, only the precise damage amount brought up by defendant. The function of the theory of waiver is to permit reply to an issue raised by one's adversary. The reply must be restricted to that issue, but there is no logical reason to restrict a party to the language in which the adversary frames it. When defense counsel questioned the likelihood that the cost of all the alleged defects could add up to over $73,000.00, plaintiff's attorney should have been allowed in reply to explain what the elements of that claim were and to show how they could support a claim of that magnitude.

For example, in *Sullivan v. Hanley,* supra, a personal injury case, plaintiff's coun-

sel in the opening portion of the argument had discussed only defendant's liability, not mentioning plaintiff's injuries. Defense counsel then addressed principally the issue of liability but also commented on testimony that plaintiff's doctor had seen him only thirteen times after he left the hospital. This, the court said, "certainly" entitled the plaintiff's attorney to go into the subject of damages in the closing argument. And in *Barrett v. Morris*, supra, where the plaintiff's attorney stated during the course of opening argument that he had argued only physical injuries other than brain damage and defense counsel elected to argue that there was no brain damage, it was held that the mention of the figure of $85,000.00 for the first time in the plaintiff's closing argument did not warrant reversal. At page 105, the court said:

". . . the fact that defendant's counsel did make argument to the jury on the issue of damages constituted waiver of any possible objection in this regard and in itself opened the way for plaintiff to argue the question of damages."

See also *Goins v. O'Keefe,* 412 S.W.2d 513 (Mo.App.1967).

We, therefore, hold that plaintiff was wrongfully denied the opportunity in its closing argument to discuss the issue of damages and how it arrived at the amount of the prayer.

We will here consider the other allegations of error as they may well reoccur on retrial. In closing argument, counsel for plaintiff noted that defendant had not called as a witness Mr. Robert Ruck, its on-the-job supervisor for the Midwest project, and advised the jury that they could infer from this that Ruck's testimony might have been unfavorable to defendant. Defense counsel countered in his argument that plaintiff "could have subpoenaed" Ruck as a witness if it was anticipated that Ruck's testimony would be adverse to defendant. Plaintiff objected on the grounds that Ruck was not "equally available" to it.

The objection was overruled and plaintiff assigns this ruling as error, contending that it deprived plaintiff of the "unfavorable inference" to which it was entitled by reason of Ruck's absence.

 Although counsel may, under some circumstances, comment on the failure of his adversary to call a certain witness, such practice is not permissible when the witness is equally available to the party seeking to benefit from the witness' absence. An employee of one party is not generally regarded as "equally available" to the other. *Adam Hat Stores v. Kansas City,* 307 S.W.2d 36, 41 (Mo.App.1957). Thus, if there were no other factors in this case relating to the failure of defendant to produce its supervisor of the Midwest project, perhaps plaintiff would have been entitled to its comment and inference. But plaintiff took Ruck's deposition prior to trial. This fact serves to make Ruck equally available to plaintiff. In the case of *Bean v. Riddle,* 423 S.W.2d 709 (Mo.1968), a wrongful-death action arising from an automobile accident, plaintiff commented on defendant's failure to call his father, who had been a passenger in his car. Plaintiff, however, had deposed the father, and the court held, at page 721, that: "In that posture, plaintiff's knowledge in respect to the testimony Erman Riddle could give was equal to that of defendant . . ." Therefore, no inference was permissible to plaintiff. See also *Lix v. Gastian,* 287 S.W.2d 354 (Mo.App.1956), in which the preservation of the testimony of the plaintiff's stepson in the transcript of an earlier trial of the same case served to make the stepson equally available to the defendant.[1] Since plaintiff had deposed Ruck prior to trial, it was entitled to no inference from defendant's failure to call him, and defendant's statement that plaintiff "could have subpoenaed" him was therefore properly allowed.

 Midwest next asserts as error the trial court's refusal to permit cross exami-

---

1. Under § 492.410, R.S.Mo.1949, in effect at the time, the transcript could have been "used in the same manner and with like effect as if such testimony had been preserved in a deposition in said cause."

nation of defendant's president, Mr. Richard Ortmann, concerning the rejection by an architect and Mr. Lapin of a valley guttering system which defendant had proposed to install on a skating rink. An offer of proof was made that Mr. Ortmann would testify that Mr. Lapin and the architect objected to that type of system "for the same reason . . . that caused the damage in this case." Plaintiff insists that such cross examination was proper because the witness had been permitted to testify on direct, over objection, that such a system had been used by defendant on several other buildings. A reading of the transcript shows that Mr. Ortmann did so testify in response to one question but that his testimony never touched on the efficacy of the systems installed on the other buildings. Plaintiff's argument on this point seems to amount to an invocation of the doctrine of curative admissibility, although it is not so articulated. Without exploring that doctrine and the contingencies under which it may arise,[2] suffice it to say that on the present state of the record, the trial court could not be convicted of error for excluding an obvious attempt by plaintiff to inject, through Mr. Ortmann's testimony, the opinions of Mr. Lapin and an architect that a valley guttering system was not desirable on a skating rink. It may be that on retrial the evidence excluded by the trial court could, in a different setting, be admissible. At this point, we decline to speculate.

Finally, plaintiff contends that the trial court erred in failing to grant a new trial because the jury award of one dollar on a prayer of over $73,000.00 was unsupported by the weight of the evidence and indicated a bias and prejudice on the part of the jury. Plaintiff argues that once the jury determined that respondent was liable under the contract, it was obliged to award real rather than merely nominal damages since defendant had introduced nothing to refute plaintiff's evidence as to the measure of that liability. We do not agree with plaintiff's reading of the transcript.

Defendant developed evidence from which the jury could have found that it was not liable at all: that the problems with the guttering system were caused by plaintiff's improper maintenance in failing to keep it free of leaves and debris; that the defects and omissions in the structure were authorized by a clause in the contract which permitted it "to make minor changes in the work . . . not inconsistent with the purposes of the building." However, defendant also attempted to minimize any damages which plaintiff may have suffered by repeatedly stressing the triviality of plaintiff's grievances. From such evidence, the jury could well have found that defendant was liable for having deviated from the contract in one or more respects, but that the damage suffered by plaintiff was inconsequential.[3] "The jury's broad discretion in fixing the amount of award is conclusive on appeal unless the appellate court can say that the verdict is so shockingly and grossly excessive or inadequate that the amount of the verdict is due to passion and prejudice." *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 801 (Mo.App.1975) citing *Boehmer v. Boggiano,* 412 S.W.2d 103, 110–111 (Mo. 1967). In light of all the evidence, it cannot be said that the award of nominal damages was "shockingly and grossly . . . inadequate . . ." The trial court did not err in permitting the award to stand.

2. We may note parenthetically that, since Ortmann's testimony concerning the installation of the system on other structures came in over plaintiff's objection, the doctrine would not apply. *State ex rel. State Highway Commission v. Lynch,* 471 S.W.2d 261, 266 (Mo.1971); *Daniels v. Dillinger,* 445 S.W.2d 410, 416–417 (Mo. App.1969). See also Wigmore on Evidence, 3rd Ed., Vol. I, § 15, p. 304.

3. We have examined the cases cited by plaintiff in support of its position on this point and find them readily distinguishable. In each, either the defendant had challenged only the liability, presenting no evidence in mitigation of damages, or liability had been conceded and there was substantial evidence to support real, as opposed to nominal, damages. As an example of the former class of cases cited by plaintiff, see *Merriman v. City of Chillicothe,* 217 S.W. 637 (Mo.App.1920); as an example of the latter class, see *Nance v. Kimbrow,* 476 S.W.2d 560 (Mo.1972). In the instant case, defendant vigorously contested both liability and the amount of damages throughout the trial.

Because the trial court erred in limiting plaintiff's closing argument as to the amount of damages, the case is reversed and remanded for new trial.

STEWART, P. J., and REINHARD, J., concur.